Thank you, bye-bye. Wow, that's... Thank you. I know. I know. Oh. Let's see. 1813-88 United States v. Arturo Bustos And it's Mr. Sasson or Sasson Sasson So, still good morning. Good morning, Your Honor. Good morning, Your Honors. May it please the Court. My name is Anthony Sasson. I represent Arturo Bustos in this appeal. Mr. Bustos is a 62-year-old man whose 100-month sentence is essentially a life sentence that he received due to certain procedural errors that we raised in our brief. While the organizer and leader of this one-day conspiracy received a 65-month sentence. But look, why should the life sentencing render the prior conviction less relevant when the delay was due to the ongoing criminal conduct of remaining a fugitive? Well, I think saying that it's less relevant may not accurately describe our position. And I say that because the looking at criminal history, that offense took place 26 years before the arrest in this case. And our position is that the five points that he received towards his criminal history because of that timing over-represents his propensity to commit crimes. But that's timing that was caused by his own conduct. Do you want to pick up whatever you dropped? Oh, thank you. Thank you. Did they polish the... No, I think I have something that's a little... There we go. That is correct. It was from his own conduct. But it also doesn't result in completely disregarding his criminal history, particularly in comparison to the others, because he would still have been a three. But while it being caused by his conduct is certainly something to consider, there's also the fact that for those... It actually came to 19 years by the time he was arrested again. In that 19 year period, there wasn't any known police contact. Known is the operative word. It is the operative word, but that's what we have to rely on. I think it's also important with the argument that it over-represents the criminal history or his propensity, particularly when viewed of some of the comments made at the sentencing hearing. The court in addressing his age made comments that recidivism probably wasn't applicable because of what it deemed to be a lifelong participation in the criminal drug trade. The government also advanced that point in its briefs, both here and at sentencing, as well as its argument at sentencing. But when you look at the criminal history, I think... And again, I'm speaking procedurally whether it was considered. It wasn't considered because when you do look at that criminal history, there are two significant gaps in drug trade and its criminal history. The first one occurs after his first conviction, which is a 10-year gap from 1979 to 1990. There were no drug offense convictions. And then, of course, when he was gone, the 19 year. So again, known is, as you said, the operative word here, but that's all we have. There's no known involvement by him. And the only time he had been imprisoned for anything prior to this in offense was a collection of 1990 cases. I'm sorry. 2009 cases, which included the 1990 case. One was for having a false ID. One was for possession of drug, but it was a Class IV because he only got one year in prison. So that would mitigate against him distributing. And then, of course, the old case that had the outstanding warrant. So I raise that, and I think it's significant because it over-represents his... It gives him five points while it is timing, but it still gives him five points, which I don't think is an accurate representation on his propensity to commit crime. And I think it was not considered and it's highlighted by the judge's comments of a 30-year continuous participation in the drug trade, when in reality when you do look at his record and you look at the timeline and what we do know, it's not an accurate depiction of Mr. Bustos. So, and of course, then that five points results in a jump in the history category from a three to a five, and those jumps are always very significant. They're made more significant by his age and his health. And again, I think the government in reading their response and trying to address it and reply, the government emphasized each point kind of in a vacuum by itself. And what our position is, each one of those are a valid concern, but when you address the cumulative effect of the failure to consider those various issues as they relate to each other, they result again in a 62-year-old person in poor health who involvement in this case was, I'm not going to put them in the category of a minor offense level, but it's a one-day conspiracy, a one-transaction conspiracy. The conspiracy was developed over a month by co-defendants that received 65 months. It was developed because the co-defendant had a prior transaction with undercover officers where my client didn't. The only involvement that the appellant, Arturo Bustos, had in this was potentially being in the background of some phone calls between Enemesio Bustos and the agent the day before and then going there on the day. He had certain roles on that day. I'm not arguing that he's a minor participant, but that when put in context of the sentences in light of how this 1990 case had such a disproportionate effect on his criminal history in the resulting sentence, those procedural errors, and I say they're procedural errors because in reviewing the sentencing transcript, there's about three and a half pages of the district judge's findings. They're not directly addressed. Didn't he implicitly address that argument though when he talked about him having a criminal history and in particular, while on parole from his last offense, conducting and engaging in this criminal activity and essentially being 62 years old at the time and old enough to know better? When you look at that section of the I don't think it's implicit for two reasons. The first one is a major thrust of my sentencing memo addressed with the over-representation and how it affected things. But why wouldn't the fact that the district court judge specifically talked about the fact that your client was on parole at the time being significant to his decision in imposing sentence, doesn't that implicitly address your argument of over-representation? Well, what it did do, and I don't mean not to look at you when you speak, but I was turning the pages where I think it is. It was explicitly in reference to our mitigation argument about age and the decrease in the likelihood of recidivation as people get older. No, the judge when he imposed it, he specifically said about defendant's criminal history in the 12 year sentence, not deterring, that I failed to see how on a subsequent conviction committed while he was still on parole for that, I could give him a below-guideline sentencing range. That seems to be implicitly addressing the over-representation argument because he's saying, look, he's on parole at the time and still going back out and engaging in this conduct. I... And he doesn't issue no under the law have to specifically say, I am addressing this particular argument. He can do it implicitly. Well, he can do it implicitly, but I also think that in light of the tailored into that argument was the argument of the the discrepancy in the case, in the sentence between the disparity. And in looking at the record and determining the basis of it, which is what the procedural challenges raise, I think it's very difficult to do that on this record to determine if he was either somewhat discounting the timeliness of the 1990 points or not in still imposing the sentence. And that's initially, I see my time is almost up, and just briefly as I go and reserve the rest of my time, our position with the procedural thing is that the government, not thing, but issue is that the government is not entitled to the presumption of reasonableness in this case because we're raising the not purported with 3553. Thank you. Thank you very much. Okay. Ms. Coleman. May I please the court, Your Honor? Good morning. Kalia Coleman on behalf of the United States of America. Ms. Coleman, was there any evidence in the record as to where Mr. Bustos was, what he was doing during that, you know, between the 1990 conviction and the sentence? Yes, Your Honor. The evidence of that can be found in the pre-sentence investigation report. And based on comments made by the district court at the beginning of the sentencing hearing, it was clear that the court had in fact reviewed the pre-sentence investigation report. Specifically, in the pre-sentence investigation report, it was indicated that during that 19 year period, at some point the defendant had been deported in 2015. And he in fact admitted that he unlawfully re-entered the United States following that deportation. There was also questions regarding the defendant's employment status during that period of time. And the defendant reported that he had maintained various bartending jobs, but could not cite the specific names of those employers or the location of those employers. So that information was unverified. I bring that up because given that the district court read the pre-sentence investigation report and stated on the record that he had done so, it was reasonable for the court to infer that during that 19 year period, because there was unverified employment, there was also additional illegal conduct that the defendant admitted that he had engaged in being unlawfully re-entering the United States, that he had not been law-abiding and had engaged in additional criminal conduct possibly to sustain his lifestyle and to support himself economically. Your Honor, another issue that defense counsel raised during his argument was the disparity in sentences between the defendant and Indemicio Bustos, who was one of his co-defendants. And the court did expressly address how it weighed the criminal culpability amongst the two defendants. The court commented specifically, which can be found in the special appendix pages 27 to 28, with respect to his role, referring to Arturo Bustos, in the offense. The defendant may have come into the offense in a later stage than others, but his role was significant. He was involved completely. And that direct comment by the court was further supported by additional evidence that was also available to the district court. Specifically, what I'm referring to are the facts as outlined in the plea agreement in which the defendant himself admitted that he had participated and recorded calls, which involved the co-defendant Indemicio Bustos and also himself and the undercover officer. And these calls occurred on October 11th and October 12th, so the day before the actual transaction and the actual day of the transaction, in which they explicitly discovered or, excuse me, discussed the price of the heroin that would be distributed, the location, and in fact, it was the defendant, Arturo Bustos, that ultimately decided the meet-up location and also the quantity that would be sold. The defendant further admitted in the plea agreement that he was the individual, along with co-defendant Omar Landa, who entered the car with the undercover officer and verified that the money was brought before the drugs were actually delivered. All of this information was available to the district court judge and, therefore, that is why the court expressly commented that the defendant's role was significant. The court further remarks regarding the defendant's criminal history and it being more extensive than that of Inamicio Bustos' criminal history was a justification for the increased sentence that was imposed. An additional factor that the government would like to address is counsel argued that the court did not consider the cumulative effects of all of these factors, including the defendant's health and his age. Again, the court discussed at the beginning how it had reviewed all of the filings of the parties. Obviously, the court heard all of the arguments of the parties. Based on that, the court placed specific emphasis on the seriousness of the offense and the fact that the defendant had committed the instant offense while he was on state parole. The court is only required to give a meaningful record for this court's review. This court only has to determine that the district court gave a meaningful consideration of all of the arguments presented by both parties. The government would submit to the court that based on a review of the record that the court did give a meaningful consideration to all of the factors that were presented and ultimately determined that in weighing those factors, the seriousness of this offense and also the need to promote respect for the law and deterrence given that this defendant had committed another drug distribution offense after he had served a significant term of imprisonment for a state drug distribution offense warranted a substantial sentence. The government would point out it was a low-end guideline sentence that was imposed here. The only additional point that the government would like to address is the fact that the court also, while not expressly commenting on that 19-year gap, as I reiterated earlier, the court seemed to give great weight to what the defendant, what was known to the court at the time of this offense, which is that the defendant was on parole at the time he committed the instant offense. For all of those reasons, the government would maintain that there was no procedural error in this case. Since the defense argued briefly about substantive reasonableness, it is our position that because this was a within-guideline sentence, there is a presumption of reasonableness and that the defendant has not presented, either in argument or in the filings, any evidence to rebut that presumption. And so we would ask, unless the court has further questions for the government, we would ask that the court affirm the defendant's conviction and sentence. Thank you very much, Ms. Coleman. Mr. Sasson? Come on up. We're going to give him two minutes. Thank you very much, Renner. It's more than enough. Thank you. There were just a few points from what counsel mentioned that I wanted to touch on. In terms of his employment and what he was doing at the time within the parameters of the PSR, my recollection is that he was able to give general locations of where these bars were, but actually indicated that they were now closed at this point. And I believe with one of them, he may have even given a name to where he was working. And in terms of being responsible for the arranging the location of the transaction, within the record, what actually happened is Enemacio and Arturo came in the same car with somebody else. Arturo got out, waited for the undercover officers. He was on the phone, and he waited, got in their car, and told them where to go. And it was the extent of his planning for it. So to the extent that he was more involved in the actual planning, I would dispute that. In the end, I think you have a pretty good handle on what his involvement was in this case. He was not the one to set up the transaction. He did not bring the heroin. He did not contact the source to get the heroin. He did not bring a weapon, as one of the other co-defendants brought to the transaction. He was, as I said, you have a good handle on what he was doing. And I think that the double sentence, that he doubled the time that he received from Enemacio by the failure to consider all of those adequately would support having it sent back for reconsideration and resentencing hearing. Thank you very much for the extra time. And thank you. You were appointed, were you not? Yes, Your Honor. Thank you for the fine job you did for your client. Thank you, Your Honor. And you have the thanks of the court. The government has the thanks of the court, too. So, all right, everyone. We're going home. This court is out of session until tomorrow morning at 9.30.